IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| JONATHAN K. YU ) | |
| ) | |
| Plaintiff ) | Case No. 8:11-cv-03472-DKC |
| ) | |
| v. ) | |
| ) | |
| KEVIN B. WILSON LAW OFFICES ) | |
| PATRICIA STAPLES ) | |
| RHONDA CLARK ) | |
| ) | |
| Defendants ) | |

**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

COMES NOW Jonathan K. Yu, through undersigned Counsel, and responds to Defendants' Cross-Motion for Summary Judgment. In opposition he presents the following:

The purpose of the FDCPA is to impose an affirmative obligation on the debt collection industry to maintain procedures designed to avoid discoverable errors. *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002 (9th Cir. Ariz. 2008). Accordingly, and common sense would dictate, there is a bona fide error exception which justifiably exempts from liability only those debt collectors who have unintentionally violated the Act in spite of their "maintenance of procedures reasonably adapted to avoid any such error." *15 U.S.C. § 1692k(c)*. The burden is on the debt collector to prove this affirmative defense. *Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. N.C. 2012)* (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002)).

Here, it is undisputed that Defendants attempted to collect from Plaintiff a debt that had been included in his bankruptcy. *Defendants Answer.* It is undisputed that these collection attempts are fals statements prohibited by the FDCPA pursuant to 15 U.S.C. § 1692e(2)(A). (Cross-Motion for Summary Judgment, p. 7*)* During deposition, Defendants stated that what occurred with Plaintiff was not an isolated incident but a regular occurrence. (Wilson Dep 47:16).

Despite these admissions, Defendants boldly insist that they should be entitled to the bona fide error exception pursuant to 1692k(c) when they clearly have NO procedures in place to prevent the **particular error at issue in this case** - attempting to collect on debt included in bankruptcy. *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006).

Defendants' assertions should fail as the Supreme Court has held that the bona fide error defense is a **narrow** exception to liability under the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605 (U.S. 2010). Here, Defendants conduct should not qualify for the bona fide error defense as they have failed to implement **any** such preventative measures; their alleged "procedures" are neither reasonable nor effective as they have failed to prevent the instant violation and will not prevent future violations from recurring.

b.   *Reasonable Procedures*

In their Cross Motion for Summary Judgment, Defendants claim that it is "undisputed" that they have maintained reasonable procedures to avoid making collection attempts against bankruptcy debtors. (CMSJ p. xx). In reviewing Defendants' "procedures", it is clear that they have ignored the FDCPA's mandate that debt collectors must make active efforts to **prevent** mistakes *ex-ante*, not **remedy** them *ex-post*. In this case, an exercise of care to avoid making the mistake, and thus an act **before** the false statement is made, is necessary to satisfy the requirements of 1692k(c). *Alexander v. Unlimited Progress Corp.,* 2004 U.S. Dist. LEXIS 21013 *(*N.D. Ill., Oct. 19, 2004).

Here, Defendants' normal practice is to assume that they would not be forwarded bankruptcy accounts; when they invariably contact a bankruptcy debtor on a collection attempt, only *then* would Defendants perform their due diligence to verify the bankruptcy status of the account. Defendant's passive and unreasonable reliance on its clients is a clear failure to take proactive measures to screen for bankruptcy and should not be afforded exception pursuant to 1692k(c)

*i. Reliance on NACS/Shady Grove*

Courts have allowed debt collectors, in certain situations, to rely on information provided to it by the creditor without requiring independent investigation. *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635 (D. Md. 2010)(citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997).

However, a debt collector's mere "reliance" on its creditor-clients to provide it with the relevant, current and accurate information on a debtor's account, including whether a debtor has filed for bankruptcy, without anything else is merely an unfounded assumption and **not** a "procedure". *Turner v. J.V.D.B. & Assocs.*, 318 F. Supp. 2d 681 (N.D. Ill. 2004).

In allowing the debt collector to rely on the creditor's representations, Courts have required explicit warranties from the creditor in order for the debt collector's reliance to be considered a "reasonable procedure" for the purpose of the bona fide error exception. For example, the Courts in *Sayyed* and *Jenkins* found that where the creditor submitted an affidavit attesting to accuracy of the records, the debt collector's reliance was reasonable; any error derived from this information would be subject to the bona fide error exception under 1692k(c). *Sayyed,* 733 F. Supp. 2d at 647; *Jenkins*, 124 F.3d at 834.

The 7th Circuit also excused a debt collector from liability where it had a written contract with the creditor **and** a concrete "understanding" with the creditor that the latter would not send over bankruptcy accounts for collections. *Hyman v. Tate & Kirlin*, 362 F.3d 965, 967 (7th Cir. 2004).[1] Additionally, the *Hyman* Court found that Defendant's reliance on the creditor's information was reasonable because it was able to demonstrate that the creditor rarely forwarded accounts later found to be in bankruptcy.

Here, the corporate representative of Defendant Kevin B. Wilson Law Offices ("KBWLO") stated under oath that it makes no effort to screen for bankruptcy accounts. (Wilson Dep.14:12, 20: 22). He also testified that Defendant KBWLO had neither a written agreement with North American Credit

---

[1] Interestingly enough, the lower Court in *Hyman* accepted the debt collector's contentions that 1) it would need to request a credit report on every account referred to it for collection in order to screen for bankruptcy and 2) that it would cost $1.5 million per year. An AACER/BANKO inquiry costs $0.01 per search and would perform the same function at a fraction of the price.

Services ("NACS"), who forwarded the Plaintiff's account to Defendants, nor explicit assurances from NACS that it would not send over bankruptcy accounts. (Wilson Dep. 22: 20, 45:23). Even if there were such assurances by NACS, Defendants would not be able to reasonably rely on them since they knew that NACS did not do their own due diligence prior to sending the accounts to Defendants. (Wilson Dep.14:17). This is exactly the kind of unfounded assumption[2] that the *Turner* Court found NOT to be a reasonable procedure.[3]

Defendants claim they have never been previously sued for collecting on bankruptcy debtors so therefore the existing procedures are reasonable.[4] Lack of incident does not prove that any alleged procedures are reasonable; a debt collector is not entitled under the FDCPA to sit back and wait until a creditor makes a mistake and **then** institute procedures to prevent a recurrence. *Reichert*, 531 F.3d at 1007

Defendants insist, however, that their clients would never send to them accounts in bankruptcy because it makes no business sense -- yet Defendant's corporate representative testified that collection calls to bankruptcy debtors occur on a regular basis. (Wilson Dep. 47:16).Thus, the lack of litigation against Defendant appears to be due more to the ignorance of the debtors rather than the effectiveness of Defendants' procedures.

Even if this Court were to countenance Defendant's assertion that it had reasonable procedures in place, this Court has also held that where the error occurs routinely, the procedures would be found "woefully inadequate". *Spencer,* 81 F. Supp. at 592. Accordingly, the Defendants in the instant case have not enacted the safeguards contemplated by the FDCPA and should therefore be precluded from asserting the bona fide error defense.

---

[2] "We – assume is a terrible word to use… if [NACS has] notification of bankruptcy they wouldn't send [the account] to us." *D. Depo, p. 23  line 2.*

[3] Most of the affidavits submitted by the Defendants claim that the parties would forward bankruptcy information as soon as they received it – yet in this case, the Bankruptcy Noticing Center certified that it had mailed notice of the Bankruptcy to Shady Grove Adventist Hospital, the original creditor. Shady Grove claims never to have received it despite the fact that there the letter was never returned as undeliverable.

[4] Defendant has however admitted that it had been sued under the FDCPA by a Bankruptcy Trustee for a different kind of violation. *D. Depo, p. 17  line 10.*

*ii. Post-violation cessation of collection activities*

Despite lacking safeguards to prevent communication with bankruptcy debtors, Defendants make much ado of their allegedly rigorous continuing education program, claiming to have extensive written policies and procedures instructing employees in collection procedures and the requirements of the FDCPA. Upon closer examination, Defendant KBWLO's collection guidelines only address processing debtor accounts **after** a collector receives notice of a bankruptcy. While these actions would are required by the FDCPA, they are incomplete and a red herring for the purposes of **preventing** this kind of violation.

In order to ascertain the factual basis for Defendant's assertion of the bona fide error exception, Plaintiff requested, in discovery, that each Defendant "[i]dentify all facts that support the contention in your Affirmative Defense that Defendant's violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." In response, Defendants all uniformly responded with

> "See affidavit of Ashley Gaither produced as Documents D00016 through D00019. Documents that will be produced pursuant to Plaintiff's request for production of documents will further show the procedures of KBWLO that support this defense. (*See Documents D0008 and D00013.)*"

*Defendants Response to Interrogatory #22.*

Ms. Gaither's Affidavit only identifies procedures undertaken by Defendants upon receipt of bankruptcy notices from other parties, including the consumers themselves. Document D00013 further expands upon this by instructing collection employee only on what to do **after** he or she is notified by debtors of an active bankruptcy.

Clearly this "procedure" would not **prevent** the violation from occurring ; an exercise of care to avoid making the mistake, and thus an act **before** the false statement is made, is necessary to satisfy the requirements of 1692k(c). *Alexander v. Unlimited Progress Corp.,* 2004 U.S. Dist. LEXIS 21013 (N.D. Ill., Oct. 19, 2004*).* The "procedure" of ceasing communications after being notified of a bankruptcy by

the debtor does not serve as a sufficient prophylactic measure to prevent Defendants from making collection attempts against bankruptcy debtors.

### c. Preemption of the FDCPA by the Bankruptcy Code

Defendants cite to *Walls v. Wells Fargo*, 276 F.3d 502, 510 (9th Cir. 2002), for the assertion that the U.S. Bankruptcy Code preempts the FDCPA. In contrast, the U.S. Supreme Court held in *Carcieri v. Salazar,* 555 U.S. 379 (2009), quoting *Branch v. Smith, 538 U.S. 254 (2003)*, that "We have repeatedly stated ... that absent 'a clearly expressed congressional intention,' ... [a]n implied repeal will only be found where provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute."

Instead, the great and clear majority of jurisdictions follow the holding in *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (C.A.7 (Ill.), 2004), which states that the Bankruptcy Code does **not** preempt other federal statutes such as the FDCPA. *See Gamble v. Fradkin & Weber, P.A.*, 2012 U.S. Dist. LEXIS 4410 (D. Md. Jan. 13, 2012); *In re Jones*, 2011 Bankr. LEXIS 4083 (Bankr. E.D. Va. Oct. 21, 2011); *Kline v. Mortgage Electronic Security Systems*, 659 F.Supp.2d 940 (S.D. Ohio 2009); *Alfonseca-Baez V. Doral Financial Corp.*, 2007 WL 2812779 (D. Puerto Rico, 2007); *Davis v. Farm Bureau Bank, FSB*, 2008 WL 1924247, (W.D.Tex., 2008); *Burkhalter v. Lindquist & Trudeau, Inc.*, 2005 WL 1983809, (E.D. Mo., 2005)

The Honorable Judge Easterbrook, writing for the majority in *Randolph*, held that there was no tension between the FDCPA and the Bankruptcy Code, stating "[t]he argument, rather, is one based on the operational differences between the statutes. These do not, however, add up to irreconcilable conflict; instead the two statutes overlap, and if the plaintiff shows a more serious transgression -- the willful violation to which § 362(h) refers -- then more substantial sanctions (such as punitive damages) are available. It is easy to enforce both statutes, and any debt collector can comply with both simultaneously."

The following chart included with the Randolph opinion is illustrative of the difference focuses of the FDCPA and the Bankruptcy Code and makes clear that they neither overlap nor contradict each either.

8                                                                    Nos. 03-1594 *et al.*

|  | Bankruptcy | FDCPA |
|---|---|---|
| Who | Anyone | Debt collector only |
| Scienter | Willfulness | Strict liability (§1692e(2)(A)) |
| Defense | None | Bona fide error plus due care (§1692k(c)), or reliance on FTC opinion (§1692k(e)) |
| Statutory Damages | None | $1,000 maximum (§1692k(a)(2)(A)) |
| Compensatory Damages | Yes | Yes (§1692k(a)(1)) |
| Punitive Damages | Yes | No |
| Cap on Class Recovery | No | Yes (§1692k(a)(2)(B)(ii)) |
| Maximum recovery | No | Yes, $500,000 or 1% of net worth, whichever is less (§1692k(a)(2)(B)(ii)) |
| Attorneys' fees to debtor | No | Yes (§1692k(a)(3)) |
| Attorneys' fees to creditor | No | Yes (§1692k(a)(3)) |
| Statute of limitations | None (laches defense only) | One year (§1692k(d)) |

Accordingly this Court should follow the Randolph line of cases, which find no irreconcilable conflict between the FDCPA and the Bankruptcy Code, and hold that Plaintiff is not "limited" to remedies under the Bankruptcy Code.


## CONCLUSION

Defendants do not dispute it's collection attempts for a debt that was protected by the bankruptcy automatic stay is a violation of the FDCPA, specifically 15 U.S.C. 1692e(2)(a). Defendants instead claim that the violation involving Plaintiff was an isolated incident despite having reasonable procedures in place to avoid such an error. The undisputed record shows that Defendants "relied" on its clients' records without scrubbing such accounts for bankruptcy. Courts have consistently held that such reliance by the debt collector is unreasonable without further action by induce such reliance.

Regardless, the fact that Defendants have contacted bankruptcy debtors regarding debts protected by either the automatic stay or discharge injunction shows that their "procedures" are inherently flawed and do not prevent violations from occurring. Accordingly, Defendants do not have any reasonable procedures in place to prevent these errors and therefore are not availed of the affirmative defense under 15 U.S.C. 1692k(c).The Supreme Court has reiterated that the exception is narrow by declining to expand the bona fide error exception: exemption from liability is the exception, not the rule. *Jerman,* 130 S. Ct. at 1611.

As a result, this Court should deny Defendant's affirmative defense and enter partial summary judgment in favor Plaintiff.

Respectfully submitted this 30th day of July, 2012

**/s/ Robinson S. Rowe**
Robinson S. Rowe, Bar No. 27752
ROWE BARNETT, PLLC
5906 Hubbard Dr.
Rockville, MD 20852
TEL: 301-770-4710 / FAX: 301-770-4711
interoffice@rowepllc.com

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 30th day of July, 2012, a copy of the foregoing Response in Opposition to Cross-Motion for Summary Judgment were sent to the following parties:

Birgit Dachtera Stuart
Law Offices of Ronald S. Canter, LLC
200A Monroe St., Suite 104
Rockville, MD 20850

**/s/ Robinson S. Rowe**
Robinson S. Rowe