IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JONATHAN K. YU                  :

    v.                            :   Civil Action No. DKC 11-3472

                                      :
KEVIN B. WILSON LAW OFFICES,
et al.                          :

**MEMORANDUM OPINION**

Presently pending and ready for review in this Fair Debt Collection Practices Act ("FDCPA") case are cross motions for summary judgment. (ECF Nos. 12 & 15). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment filed by Plaintiff Jonathan K. Yu will be denied (ECF No. 12), and the motion for summary judgment filed by Defendants Kevin B. Wilson Law Offices, Rhonda Clark, and Patricia Staples will be granted (ECF No. 15).

**I.   Background**

The underlying facts of this case are undisputed. In January 2011, Plaintiff's minor son received medical care from Shady Grove Adventist Hospital ("Shady Grove"). (ECF No. 1 ¶ 7). Plaintiff was unable to pay the $548.02 bill. (ECF No. 12, at 1). This debt was referred for collection to North American Credit Services ("NACS") on May 5, 2011. On August 22, 2011,

Plaintiff filed for bankruptcy with the U.S. Bankruptcy Court for the District of Maryland. (ECF No. 1 ¶ 9). Plaintiff listed Shady Grove as a creditor to receive notice of Plaintiff's bankruptcy from the court, but NACS was not listed as a creditor. On October 25, 2011, the debt was transferred from NACS to Kevin B. Wilson Law Offices ("KWLO"). KWLO did not receive notice of Plaintiff's bankruptcy when it received the account. KWLO made three attempts to collect the debt from Plaintiff: a letter dated October 26, and telephone calls of November 3 and 28, 2011. During the telephone call of November 28, Plaintiff told KWLO that he had filed for bankruptcy. After verifying Plaintiff's bankruptcy through his attorney, KWLO closed Plaintiff's account and stopped trying to collect the debt.

Representatives of KWLO and its clients, Shady Grove and NACS, aver that the entities operate with an acknowledged understanding that they will not transfer debts for collection to one another where the debtor is in bankruptcy. Further, they share all information regarding bankruptcy with one another as they become aware of it. In addition to receiving information from clients, KWLO receives information regarding bankruptcies from debtors, debtors' counsel, and directly from bankruptcy courts. KWLO also trains staff regarding procedures to verify a debtor's bankruptcy and close those accounts when appropriate.

In this instance, Shady Grove declares that it never received notice of Yu's bankruptcy prior to the November 28 phone call, which is why KWLO never received notice and pursued collection of the debt.

### A. Procedural Background

Plaintiff filed a complaint against KWLO and its two employees who called him, Rhonda Clark and Patricia Staples. (ECF No. 1). Plaintiff asserted claims for violations of the FDCPA and common law intrusion upon seclusion. After discovery, the parties filed cross motions for summary judgment. (ECF Nos. 12, 15). The parties stipulated to the dismissal of the intrusion upon seclusion claim with prejudice and completed briefing on the FDCPA claim. (ECF Nos. 17 through 20).

## II. Standard of Review

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**III. Analysis**

   **A.   *Bona Fide* Error Defense**

Plaintiff argues that Defendants' conduct in attempting to collect a debt from him after he filed for bankruptcy constitutes a violation *per se* of the FDCPA, because it is a strict liability statute. The portion of the statute that Defendants violated is 15 U.S.C. § 1692e(2)(a), which prohibits falsely representing "the character, amount, or legal status of any debt." Defendants assert a defense of *bona fide* error.

A *bona fide* error defense is available to debt collectors under the FDCPA. Specifically, the statute requires the debt collector to prove by a preponderance of evidence that: (1) "the violation was not intentional"; (2) it "resulted from a *bona fide* error"; and (3) the error occurred in spite of the debt collector's "maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). "The mere assertion of good intent, absent a factual showing of actual safeguards reasonably adopted to avoid violations of the FDCPA, is insufficient" to establish the *bona fide* error defense. *Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1141 (N.D.Ill. 1998); *see also Green v. Hocking*, 792 F.Supp. 1064, 1066 n. 5 (E.D.Mich. 1992) (rejecting a *bona fide* error defense where the defendant debt collector merely asserted that the error was unintentional without supplying evidence of procedural safeguards).

On the other hand, debt collectors are not required to engage in independent investigations of all debts referred to them for collection. *Sayyed v. Wolpoff & Abramson, LLP*, 733 F.Supp.2d 635, 646 (D.Md. 2012); *see also Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997) (refusing to require debt collector to "routinely investigate and evaluate the legal liability of the debtor for charged imposed by defendants' clients"). Furthermore, "a misrepresentation made by the debt collector

5

solely as a result of inaccurate information provided by its client would be a *bona fide* error as defined under [the FDCPA]". *Sayyed*, 733 F.Supp.2d at 647 (citing *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992)).

Plaintiff argues that Defendants cannot establish a *bona fide* error defense because they failed to maintain any procedures to avoid collecting debts that are pending discharge in bankruptcy. Rather, Plaintiff argues, they merely relied on the unfounded assumption that KWLO's clients would not forward debts for debtors in bankruptcy, and this assumption does not constitute a "procedure" for purposes of this defense. Defendants disagree, asserting that KWLO's procedures are sufficient to meet the requirements of the FDCPA.

In support of their position, Defendants principally rely on *Hyman v. Tate*, 362 F.3d 965 (7th Cir. 2004). There, the district court held a bench trial and heard evidence that it concluded established a *bona fide* error defense for the debt collector. The Seventh Circuit affirmed. The evidence established that the debt collector had a written contract with the creditor client. That contract, however, was silent as to procedures regarding debts in bankruptcy. Rather, the creditor and the debt collector operated with an understanding that the creditor would not forward debts that were in bankruptcy. *Id.* at 967. Further, in *Hyman*, the collector's clients rarely

6

forwarded accounts that were actually in bankruptcy, and, when they did, they immediately notified the collector of the bankruptcy.

Plaintiff attempts to distinguish *Hyman* and instead analogize this case to *Turner v. J.V.D.B. & Assocs., Inc.*, 318 F.Supp.2d 681 (N.D.Ill. 2004). There, the debt collector never alleged that it had any type of understanding with its clients that they would not forward accounts in bankruptcy. *Id.* at 687. It further offered no evidence that its clients would immediately notify the collector of accounts in bankruptcy, or that such accounts were infrequently forwarded. The court suggested that if the debt collector had demonstrated an informal understanding to this effect between it and its clients, this evidence could have met its burden to establish a *bona fide* error defense. *Id.* at 686. For those reasons, the court concluded that the debt collector did not establish a defense of *bona fide* error because its "reliance" on its clients to avoid pursuing debts in bankruptcy was "self-proclaimed but baseless," "not reasonable," and not a procedure reasonably created to avoid FDCPA violations. *Id.*

Here, the undisputed evidence establishes that KWLO has an understanding with clients Shady Grove and NACS that they all exchange information regarding accounts in bankruptcy with one another. Dallas Bunton, CEO of NACS, Eboneese Thompson,

Accounts Manager of Shady Grove, and Kevin Wilson all affirm that such an understanding and practice was in place. (ECF No. 15-2, Thompson Aff. ¶ 4; 15-3, Bunton Aff. ¶ 8; 15-9, Wilson Aff. ¶¶ 9 & 10; 15-12, Wilson Depo. 23:3-25:14). Plaintiff does not dispute these facts, but characterizes them as assumptions rather than a mutual understanding that would constitute a "procedure" for purposes of the FDCPA.

Unlike *Turner*, KWLO demonstrates through uncontested evidence, that based upon nearly thirty years of doing business together, KWLO, Shady Grove and NACS operated with, at minimum, an informal agreement that none would forward an account for collection where the underlying debt was subject to discharge in bankruptcy. They further agreed promptly to share knowledge of bankruptcy with one another if it was later discovered, as they did in this case. Finally, KWLO ceased collection of the debt immediately after learning of Plaintiff's bankruptcy, after only sending one letter and placing two telephone calls. KWLO's procedures and practices are reasonably adopted to avoid a violation of the FDCPA. For this reason, Defendants have established a defense of *bona fide* error, and summary judgment is appropriate in their favor.[1]

---

[1] As an alternative to their *bona fide* error defense, Defendants assert that because Plaintiff's complaint is based on their attempts to collect a debt that was subject to the stay

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendants KWLO, Rhonda Clark, and Patricia Staples will be granted, and the motion for summary judgment filed by Plaintiff Jonathan Yu will be denied. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

created by his bankruptcy filing, the Bankruptcy Code precludes his FDCPA claim. Because Defendants have established a defense of *bona fide* error, however, this argument need not be reached.